**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

BURFORD CAPITAL LLC,

     Plaintiff,

     v.

HARRY SARGEANT, III,

     Defendant.

Case No. 1:18-mc-00150

---

### MEMORANDUM OF LAW IN SUPPORT OF BURFORD CAPITAL LLC'S MOTION TO QUASH OR MODIFY SUBPOENA DUCES TECUM AND FOR A PROTECTIVE ORDER

Burford Capital LLC ("Burford"), by and through its attorneys, respectfully moves the Court pursuant to Federal Rules of Civil Procedure 26(c) and 45(d) for an order quashing the February 28, 2018 subpoena duces tecum directed to Burford (the "Subpoena") by Harry Sargeant, III, the plaintiff in an action in the Southern District of Florida, *Sargeant v. Maroil Trading, Inc.*, No. 9:17-cv-81070-Bloom/Reinhart (S.D. Fla. filed Sept. 25, 2017). For the reasons set forth below, the Subpoena, which is attached hereto as **Exhibit A** and commands performance in this District, should be quashed in its entirety. *See* Fed. R. Civ. P. 45(d)(3)(A) (motion to quash to be filed in district where compliance with subpoena is commanded). In the alternative, the Court should issue a protective order limiting the scope of the Subpoena as set forth further below.

### INTRODUCTION

On February 20, 2018, Harry Sargeant, III ("HS3") filed a Second Amended Complaint ("SAC") (**Exhibit B** hereto) in *Sargeant v. Maroil Trading, Inc.*, No. 9:17-cv-81070-

Bloom/Reinhart (S.D. Fla.) (docket attached as **Exhibit C** hereto).  In violation of the court's prior scheduling order, which set a deadline of January 8, 2018, to join new parties, the SAC asserts new claims against three new defendants, including Daniel Hall, whom the SAC alleges is a Burford employee.  *See* SAC ¶ 5.  As Mr. Hall sets forth in his motion to dismiss, *Sargeant v. Maroil Trading, Inc.*, ECF No. 131 (**Exhibit D** hereto), HS3's claims against Mr. Hall should be dismissed with prejudice because they are procedurally improper and fail to state a claim.  All other defendants have also moved to dismiss all of HS3's claims against them, asserting they are insufficient as a matter of law.  ECF Nos. 129, 142.  Yet, even before any of these motions are resolved, HS3 demands that Burford, which is not named as a defendant, produce extensive documents, communications, and information responsive to 33 separate requests.

The Subpoena should be quashed in its entirety.  In addition to being procedurally improper, the Subpoena is a poster-child for unreasonable overbreadth.  Plaintiff and his counsel made no attempt to limit the document requests to the transactions alleged in the SAC – never mind to tailor the requests to avoid imposing undue burden on Burford, as required by Rule 45(d).  Tellingly, although HS3's claims arise from alleged conduct over just three months, most of the requests span three years.  Moreover, HS3 seeks documents that the Southern District of Florida Bankruptcy Court has already ruled – in a prior related case involving these same parties – are protected by the attorney-client privilege and work product doctrine.  Finally, HS3 demands documents from affiliates of Burford that are not within Burford's possession, custody, or control.  HS3's Subpoena is so unreasonable that HS3 should be required to pay Burford's reasonable expenses, including attorney's fees, in filing this motion to quash.

## BACKGROUND

HS3 filed his original complaint in *Sargeant v. Maroil Trading, Inc.* on September 25, 2017, alleging claims against three defendants:  Maroil Trading, Inc., Sea Pioneer Shipping Corporation, and Wilmer Ruperti Pedromo (collectively, the "Ruperti Parties").  The claims all sounded in alleged fraud, misrepresentation, and unjust enrichment related to a shipping contract. *See Sargeant v. Maroil Trading, Inc.*, ECF No. 1.  In early November, HS3 and the Ruperti Parties met for a Federal Rule 26(f) conference to discuss a discovery plan, among other issues. ECF No. 16.  Another party, Latin American Investments, Ltd. ("LAIL"), moved to intervene, and the court granted the motion around that time.  *See* ECF Nos. 10, 17.  On November 7, 2017, the court entered a scheduling order instructing the parties to exchange initial disclosures a few weeks later and setting a deadline of January 8, 2018 for joinder of any new parties.  ECF No. 20 (**Exhibit E** hereto).  Two weeks after the court's scheduling order, HS3 filed an amended complaint, asserting the same claims against the Ruperti Parties but adding a cause of action against LAIL for alleged breach of a non-disparagement provision in a bankruptcy settlement agreement.  ECF No. 33.

The Ruperti Parties moved to dismiss the amended complaint but settled with HS3 by mid-January.  ECF Nos. 39, 77.  That mooted all but one of the causes of action in the amended complaint:  the breach of settlement agreement claim against LAIL.  LAIL moved to dismiss that count, and the court granted LAIL's motion at a hearing on January 19, 2018.  *See* ECF Nos. 40, 80; 1/19/18 Tr. 24-25 (**Exhibit F** hereto).  The court also gave HS3 leave to amend his complaint, but it did not grant HS3 leave to add new parties (the deadline for which had already passed), nor did it grant leave to amend the complaint to add entirely new claims.  *See* 1/19/18 Tr. 27-28.

The case then took an unusual procedural turn.  On February 20, 2018 – more than a month after the deadline for adding new parties – HS3 filed the SAC against not only LAIL but also three new defendants:  Daniel Sargeant, Andrew Preston, and Daniel Hall.  ECF No. 93.  HS3 also added entirely different claims under the Computer Fraud and Abuse Act and the Stored Communications Act, as well as state-law claims for breach of contract, invasion of privacy, and civil conspiracy.[1]  The crux of these claims concerns an alleged exchange of personally sensitive information (the "HS3 Material") between Daniel Sargeant and Mr. Hall, allegedly discussed in August 2016 and completed in October of that year.  *See* SAC ¶¶ 33-37.  Daniel Sargeant is HS3's brother, with whom HS3 has had a "known rift" for years, and part-owner of LAIL.  *Id.* ¶¶ 3, 17, 31.  Mr. Hall is a U.K. solicitor whom the SAC alleges is a Burford employee.  *Id.* ¶ 5.

The SAC alleges that Daniel Sargeant obtained the HS3 Material from an email account stored on a computer server of the Sargeant family businesses, which Daniel Sargeant owned and managed.  *See id.* ¶¶ 19, 21, 31-33, 36.  Daniel Sargeant then allegedly gave Mr. Hall the HS3 Material in exchange for separate materials related to the Ruperti Parties.  *See id.* ¶¶ 31-33.  According to the SAC, Mr. Hall performed this exchange in service of Burford's client, Mr. Mohammad Al-Saleh.  *See id*.  Mr. Al-Saleh had retained Mr. Hall to conduct investigative work and help him recover a judgment of $28.8 million in a Florida state court against HS3 and others, along with a judgment for costs and post-judgment interest.  *See Al-Saleh v. Sargeant*, No. 50 2008 CA 010187, 2011 WL 6838057 (Fla. Cir. Ct. Sept. 19, 2011).  The defendants in *Sargeant v. Maroil Trading, Inc.*, including LAIL and Mr. Hall, have moved to dismiss all claims in the SAC.  *See* ECF Nos. 129, 131, 142.

---

[1] The allegations in HS3's SAC are accepted as true for purposes of this motion only.

Eight days after filing the SAC, HS3 issued the Subpoena to Burford.  The Subpoena commands compliance in this District at the offices of HS3's counsel at 90 Park Avenue, New York, New York.  The Subpoena also sets a deadline of March 28, 2018 for production of the requested documents, but the parties agreed to an extension until April 17, 2018 for Burford to serve any responses or objections to the Subpoena or otherwise move for relief.

As explained in more detail below, the requests for production ("RFPs") seek an extraordinarily broad range of information, the vast majority of which is irrelevant to the allegations in the SAC, privileged, or both.  Among other things, the requests ask for "[a]ll documents" (regardless of subject matter) relating to communications between Mr. Hall and a number of Burford executives (RFP Nos. 8-10); "[a]ll documents" (regardless of subject matter) relating to communications between Burford or Mr. Hall and counsel at Sequor Law (RFP Nos. 12-13, 19-20), a law firm formerly engaged by Mr. Al-Saleh to enforce the $28.8 million judgment against HS3, *see* ECF No. 127; and "[a]ll documents" (regardless of subject matter) relating to communications between Burford or Mr. Hall and Daniel Sargeant, LAIL (Daniel Sargeant's company), or certain LAIL attorneys, including Charles Lichtman, who represents Daniel Sargeant and LAIL in *Sargeant v. Maroil Trading, Inc.* (RFP Nos. 4-7, 11, 14-18).  Most of these requests run from July 1, 2015 to the present; the remainder run from August 1, 2016 to the present.

On March 29, 2018, counsel for HS3 and the defendants held a Rule 26(f) conference. HS3's counsel indicated that they would not seek party discovery pending defendants' motions to dismiss, but were reserving the right to seek discovery from non-parties.  The parties later exchanged proposals regarding the pretrial schedule, but they have not completed their Rule 26(f) conference.  The defendants have moved to dismiss all claims in the SAC.  *See* ECF Nos.

129, 131, 142.  On April 13, 2018, Burford proposed that HS3 withdraw the Subpoena while the defendants' motions to dismiss are pending, without prejudice to HS3's right to reissue it should the motions be denied or to Burford's right to challenge any reissued subpoena.  HS3 refused to do so.  On April 16, 2018, Burford requested that HS3 reconsider, this time warning that it would likely move to quash and seek relief under Rule 45(d), given that the Subpoena is vastly overbroad and seeks privileged information.  HS3 again refused to withdraw the Subpoena.

## LEGAL STANDARD

The scope of permissible discovery through a subpoena is congruent with the scope of discovery under Rule 26.  *See Atwell v. City of New York*, No. 07 Civ. 2365(WHP), 2008 WL 5336690, at *1 (S.D.N.Y. Dec. 15, 2008) ("Rule 45 requests for production are subject to the limits on discovery under Rules 26 and 34."); *accord Am. Fed'n of State, Cty. & Mun. Emps. Council 79 v. Scott*, 277 F.R.D. 474, 476 (S.D. Fla. 2011).  However, Rule 45 contains significantly broader protections for non-parties than parties.  Most prominently, under Rule 45(d), "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."  Fed. R. Civ. P. 45(d)(1).  A subpoena that fails to take such steps "must" be quashed.  *See* Fed. R. Civ. P. 45(d)(3)(A)(iv).  And the Court "must" impose sanctions on the party or its attorney who fails to comply.  *See* Fed. R. Civ. P. 45(d)(1).

A subpoena is overbroad and improper if it seeks documents or information that is irrelevant or not proportional to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1) (permitting party to "obtain discovery regarding any *nonprivileged matter* that is *relevant* to any party's claim or defense and *proportional to the needs of the case*") (emphases added); *GMA Accessories, Inc. v. Elec. Wonderland, Inc.*, No. 07 Civ 3219 PKC DF, 2012 WL 1933558, at *5

(S.D.N.Y. May 22, 2012) ("As discovery under the Federal Rules is limited in scope to that which is 'relevant to any party's claim or defense,' the court may also quash or modify a subpoena that calls for irrelevant information.") (citation omitted); *accord Marjam Supply Co. of Fla., LLC v. Pliteq, Inc.*, No. 15-CIV-24363, 2018 WL 1456614, at *4 (S.D. Fla. Mar. 23, 2018) ("Although Rule 45 does not identify irrelevance or overbreadth as grounds for quashing a subpoena, courts treat the scope of discovery under a subpoena the same as the scope of discovery under Rule 26.").  The proportionality principle sets boundaries on discovery consonant with "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).  Moreover, the Court "*must* quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies."  Fed. R. Civ. P. 45(d)(3)(A)(iii) (emphasis added).

## ARGUMENT

### I.  This Court Should Quash the Subpoena Because It Is Procedurally Improper

The Subpoena is procedurally improper, for two independent reasons.

*First*, as noted, motions to dismiss the SAC in its entirety are pending.  When motions to dismiss are pending, courts routinely conclude that staying party discovery is appropriate to avoid unnecessary litigation expense and judicial burden if the complaint is deemed insufficient. *See*, *e.g.*, *Integrated Sys. & Power, Inc. v. Honeywell Int'l, Inc.*, No. 09 CV 5874(RPP), 2009 WL 2777076, at *1 (S.D.N.Y. Sept. 1, 2009) (staying discovery pending resolution of defendant's motion to dismiss, noting that "granting a stay could avoid the need for costly and time-consuming discovery"); *Johnson v. New York Univ. Sch. of Educ.*, 205 F.R.D. 433, 434

(S.D.N.Y. 2002) (staying discovery because "defendant's motion to dismiss is potentially dispositive and does not appear to be unfounded in the law" and because "the adjudication of the pending motion to dismiss may obviate the need for burdensome discovery"); *accord Roberts v. FNB South of Alma, Ga.*, --- F. App'x ---, 2017 WL 5438871, at *2 (11th Cir. 2017) (per curiam) (concluding that district court's decision to stay discovery pending ruling on motion to dismiss was not abuse of discretion because, "in general, motions to dismiss for failure to state a claim should be resolved before discovery begins") (internal quotation marks omitted); *Zinn v. SCI Funeral Servs. of Fla., Inc.*, No. 12-80788-CIV-RYSKAMP/HOPKINS, 2013 WL 12080175, at *2 (S.D. Fla. Mar. 4, 2013) (noting "strong policy and practical reasons for determining whether a complaint states a viable claim for relief before the parties engage in discovery" and concluding that defendants would be "unduly prejudiced if required to respond to discovery" before motions to dismiss were resolved); *Solar Star Sys., LLC v. BellSouth Telecomms., Inc.*, No. 10-21105-CIV, 2011 WL 1226119, at *1 (S.D. Fla. Mar. 30, 2011) ("Federal district courts have wide discretion to limit the scope of discovery or control its timing to protect a party from annoyance, oppression, or undue burden or expense.  Potentially dispositive motions filed prior to discovery weigh heavily in favor of issuing a stay.") (citation omitted).

That same logic applies with even greater force in the context of discovery sought against non-parties.  *See Arista Records LLC v. Lime Group LLC*, No. 06 CV 5936(KMW), 2011 WL 781198, at *2 (S.D.N.Y. Mar. 4, 2011) ("[W]here, as here, discovery is sought from a non party, the Court should be particularly sensitive to weighing the probative value of the information sought against the burden of production on the non party."); *accord Diamond State Ins. Co. v. His House, Inc.*, No. 10-20039-CIV, 2011 WL 147008, at *3 (S.D. Fla. Jan. 18, 2011) ("Courts must also consider the status of a witness as a non-party when determining the degree of burden;

the status of the person as a non-party is a factor often weighing against disclosure.").  As a result, courts also routinely quash or at the least suspend non-parties' obligation to respond to subpoenas when the viability of a complaint is in dispute.  *See*, *e.g.*, *Tschirn v. Kurzweg*, No. Civ. A. 03-0369, 2003 WL 21087741, at *1-2 (E.D. La. May 9, 2003) (granting motion to quash subpoenas, reasoning that if plaintiff were "allowed to conduct discovery at this time, the parties [would] incur the expense of . . . conducting the discovery and this may be unnecessary," given pending motion to dismiss); *Rosiere v. United States*, No. 2:15-cv-02187-APG-GWF, 2016 WL 10651095, at *1-2 (D. Nev. Oct. 27, 2016) (staying discovery, including non-parties' obligation to respond to subpoena, pending ruling on motion to dismiss); *McNamee, Lochner, Titus & Williams, P.C. v. Mayorga*, No. 1:13-mc-27 (GLS/CFH), 2013 WL 4520671, at *5 (N.D.N.Y. Aug. 26, 2013) (issuing protective order against non-party discovery until motions to dismiss in a related action "[were] decided," because "permitting discovery to go forward would serve no purpose"); *McKinney v. United States*, No. 07-cv-00838-PAB-KMT, 2009 WL 798583, at *2 (D. Colo. Mar. 24, 2009) (denying plaintiff's request to issue subpoena as "premature" due in part to "pending motion to dismiss").

The Court should do the same here.  The Subpoena seeks information and documents regarding a wide range of matters, purportedly in support of HS3's claims in the SAC.  But, as set out in the defendants' motions to dismiss, there is good reason to believe that HS3's claims will never get off the ground.  *See* ECF Nos. 129, 131, 142.  There is no justification for imposing on non-parties the burden of extensive document review, collection, and production prior to any judicial determination that the SAC even states plausible claims for relief.

*Second*, even setting aside the pending motions to dismiss, subpoenas are improper until the court in the underlying action has entered a pretrial schedule after the parties' Rule 26(f)

conference. The purpose of a Rule 26(f) conference is to provide a meaningful opportunity for the parties to engage in discovery planning and discovery management. *See Aguilar v. ICE Div. of U.S. Dep't of Homeland Sec.*, 255 F.R.D. 350, 358 (S.D.N.Y. 2008); *accord United States v. Marder*, 183 F. Supp. 3d 1231, 1236-37 (S.D. Fla. 2016). It also marks the beginning of discovery. Fed. R. Civ. P. 26(d).[2] Here, the parties are in ongoing discussions regarding the discovery schedule – including on the question of whether non-party discovery should be permitted during the pendency of the motions to dismiss. *See supra* p. 5.

Until the district court resolves that issue, no additional discovery should take place, including with respect to non-party subpoenas. *See Malibu Media, LLC v. Doe*, No. 15-CV-1883 (LTS)(KNF), 2015 WL 3651566, at *2-4 (S.D.N.Y. June 5, 2015) (noting that "[a] party may not seek discovery from *any source* before the parties have conferred as required by Rule 26(f)" and denying plaintiff's motion for leave to serve subpoena on third party prior to Rule 26(f) conference) (emphasis added); *Crutcher v. Fid. Nat'l Ins. Co.*, No. 06-5273, 2007 WL 430655, at *2 (E.D. La. Feb. 5, 2007) ("[T]he case law is replete with instances of courts requiring that parties seek leave of court and show good cause before issuing subpoenas to non-parties prior to a Rule 26(f) conference.").

---

[2] As noted, the only parties that participated in the case's initial Rule 26(f) conference were HS3 and three defendants with whom HS3 later settled his claims. *See* ECF Nos. 16, 77. And at that time, HS3's allegations were entirely different from those at issue now. The original Rule 26(f) conference thus no longer provides any meaningful guidance to the parties litigating the case. As a result, a new Rule 26(f) conference is warranted. Fed. R. Civ. P. 26(f) advisory committee's note to 1993 amendment ("If more parties are joined or appear after the initial [Rule 26(f)] meeting, an additional meeting may be desirable.").

## II.     This Court Should Quash the Subpoena Because It Is Overly Broad and Seeks Irrelevant Information

The Subpoena should also be quashed because it is overly broad, seeking wide swaths of information totally unrelated to the subject matter of the case, much less to issues relevant to the parties' claims and defenses.  Responding to such expansive requests clearly imposes an undue burden on Burford.  The Subpoena thus must be quashed because it violates Rule 45(d)'s mandatory requirement that courts avoid undue burden on third parties.

Consistent with Rule 45(d), courts routinely have quashed subpoenas in their entirety when requests are overly broad and seek irrelevant information.  *See*, *e.g.*, *Carvel v. Franchise Store Realty Corp.*, No. 08 Civ. 08938, 2011 WL 13269780, at *4 (S.D.N.Y. June 16, 2011) (quashing subpoenas to non-parties because they were "overbroad, unduly burdensome, and [sought] substantial information that is outside the scope of permissible discovery"); *Grigsby & Assocs., Inc. v. Rice Derivative Holdings, L.P.*, No. 00 CIV 5056(RO), 2001 WL 1135620, at *4 (S.D.N.Y. Sept. 26, 2001) (quashing non-party subpoenas that contained "non-specific, overbroad product requests that would surely amount to truckloads of documents from each non-party witness"); *Nova Biomedical Corp. v. i-STAT Corp.*, 182 F.R.D. 419, 423 (S.D.N.Y. 1998) (affirming magistrate's order quashing non-party subpoena because requests were "overbroad"); *accord McMullen v. GEICO Indem. Co.*, No. 14-CV-62467, 2015 WL 2226537, at *8-9 (S.D. Fla. May 13, 2015) (quashing non-party subpoenas because they were "incredibly overbroad and unduly burdensome as written" since the subpoenaing party sought "*all* . . . documents" related to accident at issue, rather than "narrowly tailoring the subpoenas to specific issues"); *Trigeant Ltd. v. Petroleos De Venezuela, S.A.*, No. 08-80584-CIV-MIDDLEBROOKS/JOHNSON, 2009 WL 10668731, at *4-5 (S.D. Fla. May 5, 2009) (quashing non-party subpoena in its entirety

because it was "overbroad," noting "the generalized nature of the requests" and the subpoena's "facial[ ] overbr[eadth]").

The breadth of HS3's requests warrants doing so here.  Request Nos. 8, 9, and 10, for example, seek "*[a]ll* documents relating to communications or interactions" between Mr. Hall and three Burford employees from August 1, 2016 to the present, regardless of whether those communications or interactions relate to the subject matter of the pending litigation.  Not only do these requests implicate privileged communications, *see infra* Part III, but they would also require searching for and reviewing thousands of pages of irrelevant documents that pertain to Burford's work on behalf of other clients and its unrelated business matters.  Other Subpoena requests seeking "[a]ll documents relating to communications or interactions" with Daniel Sargeant, LAIL, or LAIL counsel, would require producing every unrelated or mundane exchange in addition to the purportedly relevant ones.  Permitting these requests would impose tremendous unjustified expense on a non-party without advancing this litigation.  And given the lack of any plausible claim of damages in the SAC, such expense would clearly be out of proportion to the needs of this case.  *See* Fed. R. Civ. P. 26(b) (requiring discovery to be "proportional to the needs of the case," considering, among other factors, "the amount in controversy").

## III.   This Court Should Quash the Subpoena Because It Improperly Seeks Privileged Information

The Subpoena's requests plainly invade the attorney-client privilege and the work product doctrine because they are designed to probe Burford's efforts on behalf of Mr. Al-Saleh in his protracted litigation against HS3.[3]  HS3's attempt to pry into the litigation strategy of his

_____

[3] The only exception is RFP No. 1, seeking the HS3 Material.  But HS3 obtained those documents from LAIL more than a month before issuing the Subpoena to Burford, so that

adversary is clearly improper – as the Southern District of Florida Bankruptcy Court has already held in a related case.

The SAC alleges that Mr. Al-Saleh engaged Burford to provide litigation funding in connection with his lawsuits against HS3.  SAC ¶ 31.  Numerous decisions have held that communications with a litigation funder and documents related to funding activities are protected from disclosure – including one case from the Southern District of Florida Bankruptcy Court involving HS3's prior efforts to invade Mr. Al-Saleh's work product.  *See In re Int'l Oil Trading Co.*, 548 B.R. 825, 831-36 (S.D. Fla. Bankr. 2016) ("*IOTC*") (litigation-funding communications are protected by the work product doctrine, as well as the attorney-client privilege); *accord Viamedia, Inc. v. Comcast Corp.*, No. 16-cv-5486, 2017 WL 2834535, at *3 (N.D. Ill. June 30, 2017) (documents provided to litigation-funding firms were protected under work product doctrine); *Devon IT, Inc. v. IBM Corp.*, No. 10-2899, 2012 WL 4748160, at *1 n.1 (E.D. Pa. Sept. 27, 2012) (communications with funders and funding agreement drafts are protected as work product and protected by attorney-client privilege); *Mondis Tech., Ltd. v. LG Elecs., Inc.*,

---

request is plainly duplicative and, therefore, improper.  *See* 1/29/18 Tr. 4 (**Exhibit G** hereto) ("So we [HS3] were provided with what we called the 'sensitive information' that we believe Mr. Wertman's clients had taken off of their server and provided to other third parties."); *see also* Fed. R. Civ. P. 26(b)(2)(C) (providing that "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive"); *Carvel*, 2011 WL 13269780, at *3 ("Plaintiff has not demonstrated any need to burden non-parties with the production of such documents, as the same documents would presumably be in the possession, custody or control of the parties to this action."); *Burns v. Bank of Am.*, No. 03 Civ. 1685 (RMB)(JCF), 2007 WL 1589437, at *14 (S.D.N.Y. June 4, 2007) ("[I]f documents are available from a party, it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them from a non-party witness [pursuant to Rule 45].") (alterations in original); *accord Belniak v. Fla. Highway Patrol*, No. 8:12-cv-1334-T-35MAP, 2013 WL 12177834, at *1 (M.D. Fla. May 7, 2013) (quashing non-party subpoena because "any potentially discoverable information Plaintiff seeks from [non-party] can be obtained from other sources").

No. 2:07-CV-565-TJW, 2011 WL 1714304, at *2-3 (E.D. Tex. May 4, 2011) (documents shared with potential funders are privileged).

In the *IOTC* case, Mr. Al-Saleh filed an involuntary bankruptcy petition against IOTC as part of his efforts to collect on the judgment he was awarded against HS3, IOTC, and others in Florida state court. *See* 548 B.R. at 829. IOTC, which is controlled by HS3, was represented by some of the same counsel representing HS3 in *Sargeant v. Maroil Trading, Inc*. *See* Order Granting Mot. for Summ. J. at 2, *In re Int'l Oil Trading Co.*, No. 15-21596-EPK, ECF No. 132 (S.D. Fla. Bankr. Feb. 8, 2016) (**Exhibit H** hereto); 1/19/18 Tr. 16-17. IOTC served discovery requests on Mr. Al-Saleh seeking, among other things, information about Mr. Al-Saleh's relationship and communications with Burford – many of the same documents sought by the Subpoena here. *See IOTC*, 548 B.R. at 829. The court denied IOTC's motion to compel production, holding that "all communications among Burford, Mr. Al-Saleh, and his counsel are protected from discovery as they are subject to the attorney-client privilege as a result of application of the common interest exception." *Id*. at 833; *see also id.* at 835 (holding that the agency exception to waiver of the attorney-client privilege applies). The court also concluded that these communications concern "'mental impressions, conclusions, opinions or legal theories,'" and therefore qualify as protected opinion work product. *Id.* at 836.

The decision in *IOTC* applies straightforwardly to the documents requested by the Subpoena. As the SAC itself alleges, Mr. Al-Saleh retained Burford in connection with his lawsuits against HS3, and Mr. Hall's alleged conduct at issue in the SAC was, according to the SAC, carried out in furtherance of that engagement. *See* SAC ¶ 31. Many of the Subpoena's requests target privileged communications related to that engagement. *See* RFP Nos. 2, 3. Some of the Subpoena requests demand communications and documents not only related to Mr.

Al-Saleh, but also related to countless other Burford clients.  *See* RFP Nos. 2, 3, 8-10, 33.  Other

Subpoena requests target Burford's or Mr. Hall's communications with counsel at Sequor Law,

a law firm that represented Mr. Al-Saleh in his judgment-collection efforts.  *See* RFP Nos. 12,

13, 19, 20.

Burford's and Mr. Hall's communications about the Al-Saleh engagement, whether with

other Burford personnel or with Mr. Al-Saleh's counsel at Sequor Law, contain information

about a "shared common interest in litigation strategy" to enforce a judgment against HS3.

*IOTC*, 548 B.R. at 832-33.  Moreover, they were prepared "in anticipation of and during

litigation" and concern "merits of claims and defenses and damages."  *Devon IT*, 2012 WL

4748160, at *1 n.1.  Both the attorney-client privilege and work product doctrine thus insulate

these communications from disclosure.

The remaining Subpoena requests seek communications between Mr. Hall or Burford and

Daniel Sargeant, LAIL, or its counsel, including its counsel in *Sargeant v. Maroil Trading, Inc*.

*See* RFP Nos. 3-7, 11, 14-18, 21-32.  Again, the SAC itself alleges that all of Burford's and Mr.

Hall's activities with respect to the HS3 Material were in service of Burford's engagement by

Mr. Al-Saleh.  Burford's and Mr. Hall's communications and documents generated to this end

were thus prepared "in anticipation of and during litigation" and concern "merits of claims and

defenses and damages."  They are therefore protected work product.  *Devon IT*, 2012 WL

4748160, at *1 n.1; *see also United States v. Adlman*, 134 F.3d 1194, 1195 (2d Cir. 1998)

("Where a document was created *because of* anticipated litigation, and would not have been

prepared in substantially similar form but for the prospect of that litigation, it falls within Rule 26(b)(3).") (emphasis added).[4]

If Mr. Hall or Burford shared their work product with parties or entities not working directly for or with Mr. Al-Saleh to enforce the judgment – such as Daniel Sargeant, LAIL, or LAIL's counsel – that would not waive its protection.  "The work-product doctrine . . . is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *Adlman*, 134 F.3d at 1196 (citing *Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947)).  Thus, unlike disclosure of privileged communications, disclosure of work product to third parties does not defeat protection.  Rather, a party waives work product protection only where disclosure "substantially increases the opportunity for potential adversaries to obtain the information." *Merrill Lynch & Co. v. Allegheny Energy, Inc.*, 229 F.R.D. 441, 445-46 (S.D.N.Y. 2004).  The SAC itself alleges that, despite familial ties to HS3, Daniel Sargeant and LAIL are bitter enemies of HS3.  *See* SAC ¶¶ 3, 17; 1/19/18 Tr. 8-9.  Disclosure of any protected information to Daniel Sargeant, LAIL, or LAIL's counsel thus would certainly not "substantially" increase the risk that such materials would fall into HS3's hands.  *Merrill Lynch*, 229 F.R.D. at 445-46.  Nor would it be "inconsistent with the policy of privacy protection underlying the doctrine," given that Mr. Hall and Burford allegedly "shared common interests" with Daniel Sargeant, LAIL, and LAIL's

---

[4] To the extent that these communications contain information unrelated to the HS3 Material, and are thus potentially not protected as work product or by attorney-client privilege, that information would be irrelevant to HS3's claims in the SAC.  Seeking production of such materials is therefore improper under Rule 26.  Fed. R. Civ. P. 26(b)(1); *Marjam Supply*, 2018 WL 1456614, at *4; *GMA Accessories*, 2012 WL 1933558, at *5.  Moreover, Burford should not be "force[d] . . . to sort through . . . years of correspondence" to provide HS3 with non-relevant information.  *IOTC*, 548 B.R. at 837.

counsel.  *In re Pfizer Inc. Sec. Litig.*, No. 90 Civ. 1260 (SS), 1993 WL 561125, at *6 (S.D.N.Y. Dec. 23, 1993).

Because all of HS3's requests improperly seek communications protected by the attorney-client privilege or work product doctrine, the Court must quash the Subpoena.  *See* Fed. R. Civ. P. 45(d)(3)(A)(iii).

### IV.   The Subpoena Is Improper to the Extent It Seeks Documents Outside the Possession, Custody, or Control of Burford Capital LLC

The Subpoena is also improper insofar as it purports to define Burford to include "Burford Capital, LLC, as well as any of [its] agents, representatives, employees, attorneys, subsidiaries, and affiliates, including without limitation Focus Intelligence, LLC (before and after it was acquired by Burford) and Dundrod Investments Limited."  Burford can only be required to produce documents that are in its "possession, custody, or control."  Fed. R. Civ. P. 45(a)(1)(A)(iii).  "To determine whether a domestic corporation must produce documents in the possession of a foreign parent or affiliate, courts have focused on whether the U.S. corporation has the requisite degree of control over the documents sought."  *Stella v. LVMH Perfumes & Cosmetics USA, Inc.*, No. 07-CV-6509, 2009 WL 780890, at *2 (N.D. Ill. Mar. 23, 2009) (internal quotation marks omitted).  "[T]he burden is on the party seeking discovery to make a showing that the other party has control over the materials sought."  *SEC v. Credit Bancorp, Ltd.*, 194 F.R.D. 469, 472 (S.D.N.Y. 2000).

HS3 makes no showing – and the SAC contains no allegation – that Burford Capital LLC has control of documents of its foreign affiliates.  *See*, *e.g.*, *In re Umarex, USA, Inc.*, Civ. Misc. A. No. 15-69-BAJ-EWD, 2016 WL 2941046, at *4 (M.D. La. May 19, 2016) (finding that U.S. corporate affiliate did not have "requisite level of control" over foreign affiliate and limiting scope of subpoena to U.S. corporate affiliate's documents only); *Stella*, 2009 WL 780890, at *3

(concluding that entity's "status as a wholly-owned subsidiary is not, by itself, an adequate basis . . . to find a sufficiently close corporate relationship such that" the entity "should be compelled to produce documents in the custody and control of its foreign parent, or any affiliate"); *Credit Bancorp*, 194 F.R.D. at 475 (concluding that subpoenaing party failed to show that U.S. corporate affiliate had requisite degree of control over foreign affiliate to compel production of foreign affiliate's documents).  Thus, to the extent that the Subpoena purports to define Burford to include foreign affiliates, the Court should quash or modify the requests.

**V.    The Court Should Grant Burford Its Reasonable Costs, Including Attorney's Fees, for Moving To Quash the Subpoena**

The Court should grant Burford its reasonable costs and attorney's fees.  As set forth above, the Subpoena is plainly improper and subjects Burford to an undue burden.  Under Rule 45(d), "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.  *The court for the district where compliance is required must enforce this duty and impose an appropriate sanction – which may include lost earnings and reasonable attorney's fees – on a party or attorney who fails to comply.*"  Fed. R. Civ. P. 45(d)(1) (emphasis added); *see Zoological Soc'y of Buffalo, Inc. v. Carvedrock, LLC*, No. 10-CV-35A, 2013 WL 5652759, at *4 (W.D.N.Y. Oct. 15, 2013) (awarding non-party "reasonable costs incurred in responding to [issuing party's] subpoena" given unduly burdensome subpoena); *accord McMullen*, 2015 WL 2226537, at *9 (awarding attorney's fees and costs to non-parties for issuing party's failure to "take reasonable steps to avoid imposing undue burden or expense").  Such a sanction is appropriate here, given the clear procedural impropriety of the Subpoena and the evident failure by HS3 and his counsel to limit the Subpoena's scope to the proper bounds of Rule 26.

18

## CONCLUSION

For the foregoing reasons, Burford respectfully requests that this Court quash or, in the alternative, modify the Subpoena and grant the requested protective order.  Moreover, Burford respectfully requests that the Court grant Burford its reasonable attorney's fees and costs as a sanction for HS3's improper and unduly burdensome subpoena.

Dated:  April 17, 2018                           Respectfully submitted,

                                                 /s/ *Derek T. Ho*
                                                 Derek T. Ho (DH0104)
                                                 Andrew E. Goldsmith (AG7360)
                                                 **KELLOGG, HANSEN, TODD, FIGEL**
                                                 **& FREDERICK, P.L.L.C.**
                                                 1615 M Street, N.W., Suite 400
                                                 Washington, D.C. 20036
                                                 Telephone: (202) 326-7900
                                                 Facsimile: (202) 326-7999
                                                 dho@kellogghansen.com
                                                 agoldsmith@kellogghansen.com

                                                 *Attorneys for Burford Capital LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on April 17, 2018, I caused true and correct copies of the foregoing to be delivered by mail and electronic mail to the counsel listed below.

/s/ *Derek T. Ho*
Derek T. Ho

## SERVICE LIST

Gregory W. Coleman, Esq.
gcoleman@lawclc.com
**CRITTON, LUTTIER & COLEMAN**
303 Banyan Boulevard, Suite 400
West Palm Beach, Florida 33401
*Attorney for Plaintiff Harry Sargeant, III*

Christopher M. Kise, Esq.
ckise@foley.com
Melissa B. Coffey, Esq.
mcoffey@foley.com
Joshua M. Hawkes, Esq.
jhawkes@foley.com
**FOLEY & LARDNER LLP**
106 East College Avenue, Suite 900
Tallahassee, Florida 32301-7732
*Attorneys for Plaintiff Harry Sargeant, III*

Ramon A. Abadin, Esq.
rabadin@abadinlaw.net
**RAMON A. ABADIN, P.A.**
2333 Ponce de Leon Boulevard
BAC Colonnade – Suite 314
Coral Gables, Florida 33134
*Attorney for Plaintiff Harry Sargeant, III*

Mitchell E. Widom, Esq.
mwidom@bilzin.com
Yazmin Fernandez-Acuna, Esq.
yfernandez-acuna@bilzin.com
**BILZIN SUMBERG BAENA PRICE & AXELROD**
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131
*Attorneys for Maroil Trading Inc., Wilmer Ruperti Pedromo and Sea Pioneer Shipping*
*Corporation*

Michael J. Garofola, Esq.
mjg@msf-law.com
Alexander D. Pencu, Esq.
adp@msf-law.com
Christopher J. Major, Esq.
cjm@msf-law.com
**MEISTER SEELIG & FEIN LLP**
125 Park Avenue, 7th Floor
New York, NY 10017
*Attorneys for Maroil Trading Inc., Wilmer Ruperti Pedromo and Sea Pioneer Shipping*
*Corporation*

Jonathan L. Williams, Esq.
jwilliams@lashgoldberg.com
Lorelei J. Van Wey, Esq.
lvanwey@lashgoldberg.com
Martin Goldberg, Esq.
mgoldberg@lashgoldberg.com
**LASH & GOLDBERG LLP**
Miami Tower
100 S.E. Second Street, Suite 1200
Miami, Florida 33131
*Attorneys for Defendant Andrew Preston*

Jeffrey Scott Wertman, Esq.
jwertman@bergersingerman.com
**BERGER SINGERMAN**
Las Olas Centre II
350 E Las Olas Boulevard, Suite 1000
Fort Lauderdale, Flordia 33301
*Attorney for Defendant Daniel Sargeant*

Charles H. Lichtman, Esq.
clichtman@bergersingerman.com
**BERGER SINGERMAN**
Las Olas Centre II
350 E Las Olas Boulevard, Suite 1000
Fort Lauderdale, Florida 33301
*Attorney for Intervenor Latin American Investments, Ltd.*